Thank you, Judge Reinhardt, and may it please the Court, this case does not involve a program of private charity. If it did, we would not be here. This case involves a state program that uses state tax revenues to achieve a state purpose of funding scholarships, subsidizing tuition payments at non-public schools in Arizona. The money that is used in this program is money paid for by all the taxpayers of Arizona, in the same way as all the taxpayers of Ohio paid for the program in Zellman, because it's money that is essentially taken out of the general fund. But isn't this really a neutral program with multiple layers of private choice? Definitely. All right. And it's those multiple layers that make it unconstitutional. The state here, unlike the state in Zellman, which chose correctly to distribute the scholarships itself and did that on a non-discriminatory basis to parents, and then let the parents use the scholarships wherever they wanted to, for some reason Arizona has chosen to use private organizations to administer the program, so that the funds here, the awards of scholarships are made by these school tuition organizations. But anyone can form a group, a group of atheists can form an STO, knowing that they're going to distribute funds to schools that they want their kids to go to? Well, yes, anyone can form an STO. But if I'm a parent and I would like my child to go to a non-religious school, say, or a religious school of a particular kind, and there's no STO that's established to fund that school, I can't form an STO. Why? You see, the essential message of Zellman is that it has to be left up to the parents. How much of the state's money is going to go to religious versus non-religious education? How much is going to go to Catholic education, Lutheran education, Jewish education? That's got to be up to the parents. In Arizona, it's not up to the parents. In Arizona, it's the small group of taxpayers, about 70,000 last year, who pay at least $1,000 in Arizona income tax, who decide how much money is going to be spent on Catholic education, Lutheran education, Jewish education. Just to break it down in terms of choice, those taxpayers have made a free choice offered by the state, much as you or I could give to a religious education fund that was charitable, that qualified, and we as taxpayers could get a deduction for that. That would not be unconstitutional. No, that would be our money. Our money. Well, it would be our money, but it would be the state's money because there's less revenue coming in because of the charitable deduction. Well, there's less revenue. The constitutional, just want to focus what we're talking about. Yeah. There are two levels of choice that are made here. One level of choice is at the funding level, which, through charitable deductions, I can fund using, in lieu of paying all my money to the state or the federal government, I can get a charitable deduction if I give it to a qualified religious education charity. So the state gets less money from me, and in that sense, I have directly funded. I could say it goes to the Jewish Federation, whatever, education fund. It's going to be used to fund religious schools. That's okay. That's not unconstitutional. And I take it you're not arguing in this case that the constitutional flaw is giving taxpayers who elect to go for the credit and get a dollar-for-dollar credit, which is more generous than a deduction. I understand, but are you arguing at that level the program's unconstitutional? No, not if the money were to go to organizations. Not if the money were to go to the state, which would then distribute the scholarships on a nonreligious basis. What if it goes to STOs that the state requires to make 50% of its scholarships has to be at least 50% have to go to secular private schools? So that essentially it's a 50-50 allocation. STOs cannot on their own qualify if they're going to impose a favor sectarian schools by greater than 50%. A couple of things. One thing, there is a big difference between deductions and credits. These are not charitable contributions by the taxpayers. But you're not attacking the constitutionality. No, I know that. But my point is that the money in this program is state tax revenue. To answer your question. Unlike deductions. Unlike deductions, right. When you give it. In our first win case, we distinguish between deductions and credits. In which case, Your Honor? The first case, this case. This case, right. The last time it was here, many years ago. Footnote 5, we said deductions are not like credits. They're not. To explain the difference. Credits are the same as giving state funds. Right. In a deduction, you're giving. Judd Fish's question is, if the STOs didn't discriminate it, would that then be constitutional? Yes. Okay. So the basic problem is that the STOs that are, that only give to religion, those STOs, that's where the unconstitutionality comes. Absolutely. Yes. What's the difference between giving to an STO that only gives to religion, which is a religious institution, the STO, and giving directly to the religious organization? You mean the taxpayers making contributions to a religious organization? Well, I'm saying if you had an organization, if you had, suppose you skipped the STOs. Well. And said tax credits will go directly to a religious school. I assume that the authors of this legislation thought that would be unconstitutional, which is why they set up the intermediate group, the STOs. I'm not sure what hypothetical you're raising. If. I'm saying forget the STOs. Okay. If the state set up. The statute said you can set aside for tax credit whatever you want, and instead of paying your taxes, you give it to religious schools. If they let taxpayers pay their taxes by paying them to religious schools. Yes. Yeah. I think that would be unconstitutional. Is there any difference with setting up an intermediate group which only gives to religious schools? No. That's also unconstitutional. No, I don't think it would be constitutional to let people pay their taxes by sending the money to churches rather than to the state. Is there any difference between what this plan does and saying you can send your money directly to the church instead of the state? Not really. Well, except here you can send your money to a non-church STO. Well, as far as the STOs that only give to religious schools. It's the same. It's the same as saying you can give your money to the church instead of paying taxes. Yeah. And it's important to distinguish between this and a real tax credit program that gives parents the credit. It's okay under Zellman, I think, to let parents get 100 percent credit for their own educational expenses, because Zellman says that if the parents make the decision, then it's constitutional in the context of Zellman. But here the parents don't make the decision about how much money is going to be spent on religion. But can I get a re-answer to my question? Yeah. I understand under Zellman we look to the choices made by the parents. In this case, that would be the parents, as I understand it, who are asking for scholarships, their free choices. That's what Zellman was talking about. That's what the prior cases were talking about. But there are two choices being made here, and I'm just trying to make clear whether or not the fact that taxpayers make a choice as to what kind of STO they allocate their tax credit dollars to, whether that's at issue here. Now, in response to Judge Reinhart's postulate that they gave to an STO that was strictly a religious STO, you said that would be unconstitutional. Well, they do that here. Isn't it true that some of these STOs allocate? Yes. Okay. So are you saying that in some respects, without even getting to the parent choice issue on the disbursement of funds, are you suggesting that the structure is unconstitutional at level one? Yes, yes. If you let taxpayers decide how much of the state's tax revenue is going to be spent on religious education, taxpayers decide, and that's what happens here. Either taxpayers giving to religious STOs or nonreligious, they're making the decision about how much tax revenue is going to be spent on religious education. You can't do that. No more than the state can do that. The state in Zellman, suppose the state in Zellman set up the voucher program and said, okay, we'll give $10 million to a sub-office that gives scholarships to Catholic schools, $10 million to one that gives to Lutheran schools, $10 million to Jewish schools, $10 million to non-sectarian schools. That would clearly be unconstitutional under Zellman. Well, that's because the state's allocating its dollars directly. You'd have the state making a discriminatory decision in handing out the scholarship money. Here what the state has done, I guess in an attempt to avoid that, is it delegates the STOs. They're the state's grantees. But who sets up the STOs? Anybody can set up an STO. Isn't that correct? Well, I'm not sure anybody can. You have to meet the Charter of Recency requirements. That's what the statute says. Any person may establish an STO. So if I want my child to go to a particular school that's not a religious school, I can contribute to an STO where I know that the money will be distributed to some school that I approve of. If there is such an STO. By the way, you cannot designate your money for your own child. You can contribute to an STO like that. That's true of religious schools as well. That's right. But what is to prevent any group of atheists, secular humanists, from setting up STOs, knowing that the STOs award scholarships to nonreligious schools? Nothing prevents them from doing that. But they cannot, in awarding scholarships from tax funds, they cannot make religious distinctions. The state is using these STOs as grantees. It's a faith-based program, in a sense. The state wants to fund private school scholarships. Instead of doing it itself, it lets the STOs fund. It permits religious organizations to be STOs. Nothing necessarily wrong with that. But you cannot let a grantee, using government funds to serve a government purpose, discriminate on the basis of religion in handing out those funds. Byron and Kendrick in the Supreme Court makes that absolutely clear. Indeed, President Bush's executive order setting up his faith-based program says you can use religious organizations, but they must give out the money on a completely nondiscriminatory basis. You can't say, we'll only give you this money if you go to church. We'll only give you this money if you're a Catholic. We'll only give you this money if you go to a worship service. That would be unconstitutional. Can I go back to Judge Fisher's earlier question? If you give a money, the state gives money, say, to an STO that doesn't discriminate or is not limited to religious schools, that would not be unconstitutional. No. And if the state gives money to an STO that has some religious schools and some nonreligious schools. If the STO does not discriminate, as, for example, one of the interveners here, the Arizona School Choice Trust, does not discriminate, if you think the Zelman exception to the general rule that you can't fund religious education applies here, when there isn't the same kind of educational crisis as there was in Zelman, the Supreme Court hasn't decided that yet, but if you think that that's true, then it would be all right to use STOs that don't discriminate on the basis of religion. Which STOs are you attacking in this suit? I assume the ones that only give to religious institutions. Yes. Right. Any others? Any ones that discriminate on the basis of religion by either only giving to religious schools or by only giving to people of a certain religion. It's those STOs that we're attacking. The Arizona School Choice Trust, if we were to win this case on that ground, would be permitted to operate. But, Judge Nelson, it's true that in theory anybody can set up an STO, but put yourself in the position of a parent. You would like your child to go to a nonsectarian school. You can't go to the Catholic STO in Phoenix, which is the largest of all STOs. You can't go to the Arizona Christian Tuition Organization, because they only give you a scholarship to do that. So you go to the Arizona School Choice Trust, which is an STO set up without religious discrimination. They have a waiting list of at least 800 people. You'll be put on that waiting list. You call up the Catholic STO and you say, hey, I can't get a scholarship from the Arizona School Choice Trust. Could I get a scholarship from you? And they say, sure, if you send your kid to a Catholic school. You say, I don't want to do that. Why don't I set up my own STO and get my friends, whose children are on that waiting list, set up another STO, get my tax credit, and my child will get to go to a school of my choice. This program was advertised in the legislature as one to help low-income families send their kids to private schools. I think the chances of a poor parent in Arizona who wants to send their kid to a private school, of getting together with their lawyer and setting up a 5013C corporation and getting friends to contribute to it, it's theoretically possible, it's practically impossible. And the practical problem here is that different STOs have different pools of money. And those pools may be twice as much for kids going to Catholic schools, for the Catholic STO, as for kids going to Jewish schools. And so if you – The Mueller case has said, you know, the amount doesn't make that much difference. It's not the amount of the – it's not the amount of who goes to which school. It's where the pressure is put on parents to send their kid to a religious school. And if the religious STOs have a lot more money per capita per applicant than the non-religious STOs, which is perfectly possible here because the churches go out and get their constituents, their parishioners to contribute, telling, hey, it doesn't cost you anything. Support Lutheran education. Give your taxes to the Lutheran STO, and it will support Lutheran education. If that STO has a lot more money than the Arizona School Choice Trust, for example, there is pressure put on the parent to send their kid to a Lutheran school if they really want to get the kid out. If there were a – if this landscape was broader, the market created, as Judge Nelson is suggesting, creates a panoply of choices to parents who are looking for scholarships. Sure, there's a large Catholic STO, but there are three of the secular STOs out there. So in terms of a parent's freedom of choice, genuine independent choice that Zelman talks about, there are no constrictions. There are – the market has developed a panoply of choices. Does that change the constitutional framework, then? No, it's still unconstitutional. If the market by accident happened to mirror the preferences of parents, which is theoretically possible, undoubtedly practically impossible, or the odds would be very much against it, it would still be unconstitutional because you have the STOs handing out government tax revenues on a discriminatory basis. But that's because – that's true when the parent opts to apply to the state for tuition grant to help their child go to a religious school. But there the person granting the scholarships, the state, is not granting them on a religious basis. In Zelman's – Choice is by – Parents. Yeah, but I can go to a division of the panoply, which happens to accord with my needs, and I can freely choose to do that. Yes, but they may not have enough money to fund you, whereas the religious STO next door may have a lot of money. So you can get a full tuition scholarship from, let's say, the Jewish STO to send your child to a Jewish religious school. If you go to the Arizona School Choice Trust, their average scholarship is $1,500. So there is a tremendous amount of possibility of pressure. Well, isn't the basic difference that the state can give money to the parents to do what it wanted, but it can't give money to the church school directly? Now, you know, I mean, a lot of these religion cases have thin lines that may not make a lot of sense, and you may not be able to harmonize, but courts have drawn them. But you can give money to the parents, even if all the parents you give money to go to the Catholic school. Because it's the parents' choice, whereas – You can't give the state money to the Catholic school. Right, and here – Neither do I. But if you took this money – Probably knew that. Probably knew that, wouldn't he? You could give the money to the parents. Yes, absolutely. If you believe that Zellman applies – one big difference, you don't have to decide this to decide the case, but this program is nothing like the program in Zellman. The program in Zellman was meant to meet an educational crisis, and they permitted Ohio to do that because otherwise these poor inner city black kids would have to go to completely inadequate schools. Nothing like that is happening here. Whether the Zellman exception to the general rule that you can't use tax revenues to pay for religious education applies when there isn't a crisis where you're just trying to, as the state says you're doing here, improve the financial health of the private schools or give middle-class parents a chance to choose schools. That is an undecided question. You don't have to decide that here because you have this blatant religious discrimination. Well, your time has run out, and we'll give you time for rebuttal. Thank you very much. May it please the Court, I'm Paula Bickett. I represent the Arizona Department of Revenue. I'll be splitting my time with counsel for intervener, Mr. Keller. He will be addressing standing and Establishment Clause issues. I want to briefly address Ray's judicata and then the Establishment Clause issues. Spend your time on the Establishment Clause. I agree. Okay. Thank you. I will. First, looking at the purpose, and plaintiffs have argued that there isn't a valid secular purpose here. Obviously, two courts have decided that. Well, let's assume there's a secular purpose. I've gone through Zelman. I look at all of the language about parents' choice and the option of parents to allocate by their free, genuine, independent choice, and I'm struck by the structure that you've created, Arizona's created, which says that the choice in the market that the parents can make through these intermediaries is limited by how the STOs in their own role decide to allocate choice. So that the funds that the state is diverting from its coffers into STOs is, by that group of organizations, reducing the choices open to parents. It's true that parents applying for scholarships get to make a choice, but the universe from which they get to make the choice is much more limited, in fact, highly more limited, than the choices that were available in Zelman. The parents could go to the state funds, and to the extent to which the funds were available, they could get the tuition grants, and then they could decide whether to use those in a secular or a non-secular private school. I don't get that freedom of choice under your program because I'm limited to what the market, a market that's created at least by the taxpayer credit dollars, choices the parents or the taxpayers at that level, and then the STOs. And I just don't understand how that kind of structure comes within all of the extensive emphasis that Chief Justice Rehnquist placed in Zelman on the allocation decision being made by the free choice of parents. Well, Your Honor, if I might answer that. Zelman does not, by its terms, guarantee that parents will have a free choice to choose to send their children to whatever school they choose. What Zelman says is that the money will only reach religious schools as a result of the parents' choice. And that is the case here. The money only reaches the religious schools because of the parents' choice. No, that's not true, because the STOs have already set up a prequalifier, which is religious-based. What's the purpose of these STOs? I mean, why do you need them? Why can't you just say the State will give this money directly to the religious schools? Your Honor, you could do that, but the Arizona legislature did not choose that method. And what we really need to decide is if the method ---- So then this is the same as giving the money directly to the religious schools? No, Your Honor. It is not the same as giving it directly to the religious schools. Well, we're only talking about challenging some of the STOs, the STOs that act as religious groups that limit their activities to religion. Those are the ones that are being challenged. Why is that any different from the religious school itself? Because the money goes as a result of a contribution by a taxpayer to an organization of their choosing, whether it be a STO that chooses to give scholarships to children that attend religious schools or an STO that chooses to allow free choice among all of the recipients. But your answer is that's no different than letting the taxpayer say, use my tax credit for the religious school. No, it is different. Why? It's a contribution to an organization, a 501C organization that then gives scholarships. That only engages in religious activity, only gives money to religious schools. And the Supreme Court has traditionally ---- I'm just trying to come to the facts. How is that different, giving money to an intermediary that only gives it to a religious school? The difference is that the State is not making the decision. The State is not choosing who gets the money. That is being made by private individuals. And the direct aid cases all involve situations where the State is actually making the decision as to who gets the money. So you could say the person then could give the money directly to the church. An individual may donate money to the church, correct. Instead of giving it to the church through the STO. You say the difference is the individual is making the decision, not the State. So the individual could give this directly to the church school or the State or the church. Correct. Okay. So this system or your view of the law is that you can give tax credits to the church. And the State could say if we had a fundamentalist elected to office and a fundamentalist administration in the State or the government, you may have a choice between paying taxes to the State or giving your money to the church. And that would be all right. Well, you may say that you can give a credit to someone who contributions. For your entire taxes. You may give your taxes. Instead of paying taxes, you may make a contribution to the church. That would be all right under your theory. You may get a credit for contribution. I said your entire taxes. Instead of a credit up to $2,000 of taxes, you get a credit for all of your taxes, and you give it to the church instead of the State. At that point, you might suspect that there was, in fact, a religious purpose. If it's not part of a scheme of benefits that is given to a broad class of individuals, and it's not part of a scheme of taxation that is consistent, those are some of the factors that the court looks at, in which the Arizona Supreme Court and the district court found that this here is a credit that is part, it's available to a very broad class of individuals. It is also part of a legitimate scheme of taxation in Arizona. It's consistent with the credits, deductions, and exemptions that are given in Arizona. It's not in any way focused toward religion, skewed toward religion. It's a neutral program. You could get a deduction for a donation to a religious organization as a charitable organization, can you not? Yes. Regular charitable. And are you likening this to that kind of deduction that you could get in your income tax form for giving to a charitable organization? It is similar. The Supreme Court in Nyquist and in Walsh has not differentiated between credits and deductions. Didn't we do that in the first Wynn case? Didn't we explain the difference between a credit and a deduction and why that made the difference? Your Honor, I apologize. I did not read that case before I came. I read it many years ago, and I don't remember exactly the distinction. We explained that in a credit, you first calculate your taxes and your bill, and then you take directly away from the state a portion of the tax you owed. And then we explained how we note that a tax credit differs from a tax deduction in that where a tax deduction is involved, giving money to a religious institution is not, as in the case of a tax credit, a free gift. And then we gave the contrast between a deduction and a credit and explained that in one case you're taking money that would directly go to the state and giving that amount to the church or the church school. And in the other, a deduction is recognized as proper. And that is certainly bonding on the second Wynn case, if that's what we said in the first. Well, whether or not it's a deduction or credit or whatever, my concern going beyond that is the money would be regarded as state money. There's no doubt that the state was entitled to the dollars, and it's deliberately saying we are going to let you allocate, we'll stick with what it does, $1,000 of a married couple, as I understand it, can allocate $10,000 of their tax liability to a religious STO. That's their choice. If they told the state, as they were paying their taxes, if the option had been, you may, as you can do on a presidential, you know, you can deduct a dollar, have that taken. Arizona has said, all right, you can check this box, and $1,000 of your tax dollars that you're paying to the state will go to one of the, you can check off the STOs that we've qualified, and here's the Catholic, if you will, STO. And you check that, and the state, therefore, has the money, and it will send or fund scholarships to that Catholic entity. Isn't that what's going on here? No, Your Honor, it's not. What it is, is they're allowing individuals to choose to contribute to an STO of their choice. I suppose putting it on the tax. That's at that level. But then the parents, you know, what Wynn is talking about is switching over and then saying, all right, the way that the tax dollars in Zellman got into the hands of the religious, all of these got into the hands of the religious institutions by the choices of the recipients, not the donors, not the taxpayers. It was by the recipients. And the recipients, if we focus on that end of the spectrum, their choices are being limited by preconditions set by the taxpayer. But they're still able to choose what school that they want to send their children to. They aren't. They're not allowed to choose what school they will get a scholarship. That is the whole purpose of the program, is not to give taxpayers a choice to allocate. The purpose, as I understand it, is to provide tuition grants to needy schoolchildren. No, Your Honor. The purpose is to provide alternative choice, expand the options. Part of that would be to give scholarships to poor children, but it's also to open up and avail the parents. More options. And to let this program work in a way that there are, in fact, more options available to people. Okay, and if the whole system works such that 100% of the STOs were religion-based, that would still be okay under your analysis? If it were truly, because of the choice of individuals and the state was not influencing. Choice of not the parents, the choice of the donors, the taxpayers. The choice of the donors to give to only religious organizations. That would still be their choice. So that the only state credit money that was available throughout Arizona to students would be if you wanted to go to a religious school. That would still be okay. If it were truly up to the choice of individuals and not the state. Choice, I just want to make sure, choice of the taxpayers, not choice of the individual applicants. They are looking for dollars. The individual applicants are still choosing what school they want to, but the choice of the taxpayers is not limited as to who. Look, I choose to go to a school I can afford to go to. The reason I want to come to the state is so I can choose to go to the private school, a private secular school. But I can't get your aid, state, because all of the taxpayers have checked off the religious STO box. And you say that would be okay because it's the choice of? The individual taxpayers as to which organization they would choose to donate to. I just want to make one point, and I want Mr. Keller to have his time. I know you didn't want to hear Ray's judicata, but the one point I want to make is that the relief that plaintiffs are requesting can only be given if you change the language of the statute. And the Arizona Supreme Court has already determined that the language of the statute is constitutional. Thank you. I don't think we said we didn't want to hear about it. We didn't want to hear about it at oral argument because the other issues were more pressing. But we've read your briefs, okay? Your Honor. We always read the briefs. Believe me, we read the briefs. Your Honor, first let me correct or explain the way the program actually operates. Can I just say, you're the intervener that counsel has said is not being challenged? That is correct, Your Honor. I represent the Intervener Arizona School Choice Trust, who allocates all of their scholarships without regard to any religious orientation. So you're not affected by the outcome of this? No, that is not true, Your Honor. How are you? Because the plaintiffs have taken the position, and I think this is correct, that there's they're not they can't sever us from the law. If you strike down the law, you strike down the entire law. But this is an as-applied challenge, I thought. They've styled it an as-applied challenge, yes, Your Honor. But as I understand their position, some of the STOs are valid, constitutional, and some are not. And yours is one that they concede is a constitutional STO. Now, maybe I misunderstand that position. I'll ask Mr. Bender. Well, I would disagree in this sense. I believe that they have asked the Court to strike the entire program, and that would affect my client. I believe their interest would be harmed by the outcome of this case if you strike down the program. So would you say that you would urge that if we didn't strike down the program, we only strike down the grants to STOs that are unconstitutional? No, Your Honor. I believe the program is set up in a completely constitutional manner. You'd rather have us, say, strike down the whole program than allow the STOs that he's not challenging? I don't believe the plaintiff's challenge gives you that option, Your Honor. I think the only option they give you is to strike the whole law or nothing at all. Well, I said we would ask him when he came back. It's his challenge. I don't. But if he says, if you don't agree that the entire statute's unconstitutional, we ask that you declare the STOs that only give to religious groups to be that part invalid, you would not want that? You'd rather have us strike it all down? Your Honor, my client would like to be able to continue providing scholarships to the many children who rely on them. So, yes, I would like my clients to have the opportunity to continue to receive the tax credit funds and fund their scholarships. Let me first address Judge Fischer's question with regard to how the program operates. This program does not operate like a tax checkoff program. I know. Okay. I just want to make that clear. And then what I'd like to do is address the private choice aspect of the program, which seems to be of significant concern to this Court. The reason why we ask whether the program is based on true private choice is because we want to state it's coercing parents to choose religious options. But Zellman instructs that that question must be answered by evaluating all of the options that Arizona provides its school children. We don't focus solely on this program. Under Arizona, they offer open enrollment for all public schools. And the evidence showed that they are, unlike in Zellman, these are good public schools in Arizona. Not all of the public schools, Your Honor. In fact, one of my clients, who is one of the intervenors, Pastor Denard, his children would attend the Roosevelt School District, which recently made front page headlines as continuing to be a failing school district, which is why he relies on this scholarship to get his children out of that Roosevelt School District, which is a failing school district in Arizona. So here we have open enrollment. We have charter schools. We have magnet schools. We have a homeschool policy that basically Arizona had done everything it possibly could do to open up all of the public choices to Arizona school children. And then it enlisted private school options by creating this particular tax credit program, which as far as the state is concerned, any person can open up and can found an STO. Any person can donate to the STO. What does it take? What's the capitalization of an STO? The only requirement was that it would establish itself as a 501c3 charity. So just a pass-through? And that when it receives the contributions, it must give 90 percent of the contributions to children for private school scholarships. So to take Judge Nelson's hypothetical, a group of atheists want to assure that atheist children will be educated in schools that tolerate and teach principles of atheism along perhaps with other things, too, but they do do that. And I don't have the funders, the taxpayers don't have their own dependents necessarily going to the school. It's because of their philosophical belief that they want to do this. And they decide they want to create an STO. So they file papers, and that's a nominal cost, I assume? Yes, Your Honor. And so, I mean, you say anybody can do it. So as a practical matter, we have to talk about practicalities a little bit here. What is the cost to open and operate a viable STO? I don't believe it takes much in the way of capitalization, Your Honor. And so then they fund themselves out of either contributions from taxpayers, of which they have to then give out 90 percent in scholarships. So they get a 10 percent overhead. That is correct, Your Honor. And in Arizona, we have 56 scholarship tuition organizations currently operating. And plaintiff's own numbers would suggest that only half of those have any sort of religious affiliation. The other half have no religious affiliation, including my client, the Arizona School Choice Trust. Okay. So if I'm a parent in Arizona, and I have looked at all the options, and I want to go, as your client, the Reverend, you mentioned, said he wanted to get out of the Roosevelt School District and wanted to go to a nonsectarian private school, what are the choices open to that parent? Well, they can always apply to ASCT. But most likely what would happen is that they would select the religious or nonreligious private school that they want their child to attend, and then they would work with that school to figure out which STOs offer scholarships for that program. And what's the universe available to them? There are 56 total STOs. There are at least, I know, two that fund any school the parent chooses. What's the availability? The record reflects, as counsel argued, that there's a waiting list for yours. And that number is declining rapidly. There are two responses I'd like to make with regard to that. Number one, that waiting list doesn't reflect parents that may have applied to other scholarship organizations and actually received the scholarships. We just can't track that. And then number two, Arizona's also recently enacted a corporate scholarship tax credit, which has allowed ASCT and other STOs to raise significantly more contributions and also dwindle those waiting lists. May I ask you a question about this? The case in the Arizona Supreme Court that upheld the statute, the Supreme Court of Arizona said, not unreasonably, reading this statute, which I find somewhat baffling, the Arizona Supreme Court, explaining this system, says parents independently select a school and apply to an STO of their choice for a scholarship. Every STO must allow its scholarship recipients to attend any, in italics, any qualified school of their parent's choice and may not limit grants to students of only one such institution. What does that mean? Your Honor, when the Arizona Supreme Court quoted that language, it also quoted the rest of the statute that specifically allows STOs to establish themselves and fund less than the whole universe of schools. That's fine, but what does that sentence mean? I think it means that the Supreme Court quotes two inconsistent things. I don't know what it means. The statute appears to have two inconsistent things. But they did say, just what I read you, every STO must allow its scholarship recipients to attend any qualified school of their parent's choice. Your Honor, what I believe the Supreme Court was saying was that any parent is permitted to apply to any STO to attend any school that is funded by that STO. That's not what it says. It says every STO must allow its scholarship recipients to attend any qualified school of their parent's choice, not any qualified school that STO selects. I understand that, Your Honor. But the very next line in the Supreme Court recognizes that STOs may establish themselves and fund less than the entire population of private schools. Well, that's the next line of the statute. It seems to say two totally inconsistent things. Well, I'd like to also point out that Justice Feldman, in his dissent, specifically complained that the STOs were able to establish themselves and fund private religious schools or fund something less than the whole population. Sometimes majorities seem to ignore dissents which understand the statute better than the majority. But that's life in a big city. The notion that the Supreme Court was not aware that this program would operate the way it is currently programmed, operating, it just strains credibility. Let me just tell you, you're more than five minutes over the time. If you could, unless anyone has any more questions, if you could take 30 seconds or a minute to sum up. Could I just get your view, because I seem to go back and forth here. Are we properly, in this case, focused on the choices of the parents? You seem to be saying it's the parents' choice that we have to look at. Yes. And, therefore, the constitutionality of this should turn on the Zellman kind of analysis, which says do parents who have decided they want to send their children to a particular type of school have a non-coerced choice of tuition aid that the state is dispensing on a non-sectarian basis? Well, Your Honor, I think your focus is too narrow, because the establishment cause concern is whether the state is coercing parents through this program to send their children to religious schools. Right. But the court in Zellman stressed that that inquiry has to be made by examining the entire universe of options. I'm not saying it's an entire thing. I'm just saying, but that's where we're focused. We're not going back to the taxpayers and deciding whether they had a free choice to decide where to allocate their money. That's correct. But the question is do they have a choice of a non-religious school. And, yes, they have public schools. They have open enrollment. They have charter schools. They have magnet schools. They have virtual schools, virtual academies in Arizona. There is no state coercion going on here that's forcing parents, as a result of this program, to choose religious schools. Now, what would your answer be if the facts developed that, as a result of taxpayer choices and STO choices, that all of the tax credit type of funding for private schools was only open to support students who wanted to go to a religious private school? There just were no STOs like yours. There would be no breach of the Establishment Clause because there would be a double attenuation between the state and the funds that ultimately flow to religious institutions. The first level would be the taxpayers, and the second would be the parents who choose to apply to those STOs. I don't understand that. I would apply to the STO because I want a tuition grant. I just don't have any choice of an STO because there are none that support private secular schools. But there are still plenty of options offered by the state that are nonreligious choices. It should be public schools. Public schools. It shouldn't go to a private secular school because that option is reserved only, as far as financial aid is concerned, to people who want to attend private religious schools. That would be okay. If those were the facts. And that would still be a constitutional program, Your Honor. There would be no breach. I will take other questions. You do turn to your question. All right. Thank you, Your Honor. Now eight and a half minutes. Thank you. Thank you, Judge Ron Hodge. You correctly understand our position. It is an as-applied challenge, and we do not challenge the Arizona School Choice Trust's administering this program. We only challenge the administration of it by religion-specific STOs. The key in Zellman is it's the recipient of the aid that the government wants to distribute that has to make the choice. So essentially, aside from your point that that was an emergency situation and maybe that rule didn't apply, if the Zellman rule did apply, the comparable implementation of it here would be for the state to give money to the state. It would give money directly to the parents who could then choose to go to any school they want. And under Zellman, that would be permissible. Absolutely right. Yes. But the state didn't want to give the money to the parents. It set up these intermediaries which funnel the money to the church schools. Right. But the parent can't get the money without the parent applying to the STO. Isn't that correct? That's true. But the parent cannot. The parent makes that choice. Right. The parent makes that choice. But coming back to something you asked during the argument about somebody who wanted to set up an STO. Yes. Remember, this program is supposed to deal with poor people. The only people who can contribute to STOs are people who pay at least some state income tax to contribute fully. A married couple has to pay $1,000. 70,000 taxpayers in Arizona contribute to this program. There are 2 million taxpayers in Arizona. Three percent of them do that. They are the three percent who tend to be more wealthy. If a bunch of poor taxpayers want to set up an STO and get their friends to contribute, they've got to have rich friends. Poor people find it very hard to use this program. And also, the expense is not only running the STO. You've got to hire a lawyer. That costs a lot of money. But the most important thing is that poor people can't fund an STO. But isn't it also true that poor people can't get charitable deductions? Wealthy people do. And they do it not necessarily the statute is written that any taxpayer, it doesn't have to be the poor person, that any taxpayer philosophically who doesn't believe in religious schools is perfectly free to set up an STO, so that parents may make a choice to apply to them. If there is an STO that funds what the parent wants, the point I'm making is that poor people would find it very difficult to set up an STO. And even if they did, the money that goes into the STO has to come from taxpayers. Poor people can't get all their friends in the neighborhood to give money to the STO because they don't have it. Remember, in order to contribute here, not only do you have to pay state income taxes, but you have to be liquid on December 31st. You have to have cash on December 31st. You have to be able to write a check to the STO then. You get it back later. Poor people don't tend to have $1,000 cash on December 31st. So the program really does discriminate against poor people rather than... But all rich people don't believe in religious schools. And rich people then have an equal opportunity to set up STOs on the theory that they believe there ought to be tax credits going to private schools that are not religious. Yeah, I understand that. I was just responding to your point about there's complete freedom to set up an STO and get it funded. There may be in theory, but in practice there isn't. All right. I understand your point. Thank you very much. The... Are you through? I have no further... All right. Thank you, counsel. The case just argued will be submitted. The Court will stand in recess for half an hour and come back in reconstituted form.
judges: D.W. Nelson, Reinhardt, Fisher